T. A. Beale & Sons, Inc. v. Commissioner.
T. A. Beale & Sons v. Commissioner
Docket No. 28314.
United States Tax Court
1951 Tax Ct. Memo LEXIS 141; 10 T.C.M. (CCH) 733; T.C.M. (RIA) 51224; August 13, 1951
*141 Respondent determined that $6,000 of the $26,150 deducted by petitioner as salaries of its officer-stockholders was unreasonable in amount, or, in the alternative, was a dividend. Held, under all the facts, the $6,000 was not unreasonable in amounts as compensation, nor was it a dividend. George J. Pfeiffer, Esq., 515 White Bldg., Buffalo, N. Y., for the petitioner. Oscar L. Tyree, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion The respondent determined a deficiency in petitioner's income tax for the taxable year 1946 in the amount of $1,225.53. The deficiency resulted from three adjustments increasing petitioner's net income. Petitioner alleges error with respect to two of respondent's adjustments, namely, whether the amount paid its officers as compensation for their services should be reduced from $26,150 to $20,150; and, whether the taxable gain realized from the sale of a building was $2,811.35, as determined by the respondent, or $1,370.33, as reported by the petitioner. At the hearing the parties disposed of the second issue by stipulating that instead of the adjustment of $1,441.02 made by the respondent, the increase in *142 taxable gain from the sale of the building should be $104.25, or a total gain of $1,474.58. Findings of Fact Petitioner, a New York corporation, is a wholesale and retail milk dealer in Buffalo, New York, handling about 10 tons daily. Its income tax return for 1946 was filed with the collector of internal revenue for the twenty-eighth district of New York, at Buffalo, New York. During the taxable year petitioner's three officers were Norman C. Beale, president; John L. Beale, vice-president; and Thomas A. Beale, secretary-treasurer. They are brothers and each owns one-third of the corporate stock. Norman spent from nine to 12 hours a day at the plant. He was in charge of three wholesale routes comprising about 170 stores. He helped load the milk into the trucks in the morning. He also presided at meetings and attended business meetings in the locality. He had been in the milk business since 1916. John was the plant superintendent. As such he was responsible for the plant machinery (worth about $60,000). He loaded milk in the morning, received all milk coming in (which included the actual unloading), weighed it in, and made all running orders for the day. He had been working *143 in the business since about 1924. Thomas was office manager, and had complete charge of the 12 retail routes. He did all the purchasing for the corporation and took care of the contracts, attended all of the labor relation meetings, and did all of the office work with the assistance of one other person. At the time of the trial he had been in the milk business for about 40 years. None of the three officers had any vacation during 1946. Any of the three was able to and did do delivery work if one of the drivers was ill or on vacation. Each also would do the job of another officer, if the latter was out or needed assistance. The amounts of the officers' salaries were not determined in advance since it was petitioner's policy to await the result of operations before deciding on the amount to pay its officers. During 1946 petitioner's gross sales increased about $41,000 over 1945, ($271,011.11 for 1946, and $229,920.65 for 1945). For the taxable year petitioner paid Norman and John each $8,650 and Thomas $8,850, and deducted $26,150 from its gross income as compensation of officers. This was the highest amount ever paid by petitioner. In its 1946 income tax return petitioner reported *144 a net operating loss of $1,823.96. In 1945 petitioner paid each officer $6,500. Petitioner had purchased a dwelling house in 1935 which, according to its tax return, it sold in May, 1946, for $6,037.11. The stipulated gain on this sale was $1,474.58. Petitioner had a deficit of $42,825.96 at the beginning of the year in question, and its books showed a deficit of $43,139.67 at the close of the year. The respondent denied the deduction of $6,000 of the $26,150 deducted from petitioner's gross income as compensation of officers on the grounds that it was an unreasonable amount as compensation or, in the alternative, that it was a dividend. Petitioner treated the payments of $26,150 in its ledger as salaries paid its officers for personal services actually rendered by them during 1946. The amount paid by petitioner to its officers as compensation during 1946 was not unreasonable in amount, nor was it a dividend. Opinion RICE, Judge: Both parties agree that the only question arising from the deficiency assessed by the respondent which is still before this Court concerns the compensation paid petitioner's officers. In his brief, respondent sets forth the following as points *145 upon which he relies: "1. Respondent contends that the salaries of the three brothers who held all the stock of petitioner were unreasonably large, considering the services rendered and petitioner's ability to pay. "2. Respondent contends further that the amount determined to be excess was in fact a dividend, being a distribution in proportion to the recipients' stock ownership of all the proceeds from the sale of a certain asset. "3. Petitioner has not sustained its burden of proof and has not overcome the prima facie correctness of respondent's determination." The first argument offered by respondent is that $8.650 paid Norman and John, and the $8,850 paid Thomas were unreasonable amounts for salaries. Section 23 (a) (1) (A) of the Internal Revenue Code permits the deduction of a "reasonable allowance for salaries or other compensation." Whether compensation is reasonable is a question of fact for this Court to decide. This tribunal in T. A. Beale & Sons, Inc., Docket No. 88007, Memorandum Opinion, entered January 5, 1939, found that $7,000 each for Thomas, Norman and John was reasonable compensation for the year 1934. In this case we have found that *146 salaries of $8,650 paid to Norman and John and of $8,850 paid to Thomas for 1946 were reasonable. In view of the changed conditions since that time, the increase to the present amounts cannot be considered unreasonable. Yet, under respondent's determination the salaries for 1946 would be less than those paid in 1934, namely, $6,650 to Norman and John, and $6,850 to Thomas. Some of the factors which we have considered were the long hours of work, the years of experience each had, the increase in business during the year, plus all other facts in the record. The respondent's second contention is that the $6,000, which he determined to be excessive as officers' salaries, was in fact a dividend resulting from the distribution of the proceeds of the sale of a dwelling house. The internal revenue agent testified that in examining petitioner's books, he found the following in the petitioner's minute book: "Minutes of Meeting - July 1946 "After a thorough discussion on salaries it was advised to declare a dividend on the amount of $6000 rec'd. from sale of property at 32 Mesmer St. Moved and 2nd to declare a dividend of $6,000.00." This entry was not in the minute book when the book *147 was produced for trial. Thomas, the secretary-treasurer, testified that there never had been such a minute entry. Whether the $6,037.11 resulting from the sale of the house was the source of the $6,000 which the Commissioner has denied as a deduction for compensation paid officers has not been established by this record. The house was sold in May, 1946, and the supposed minute entry is dated July, 1946. The facts show that the payment to Thomas of the $2,000 was apparently in December, 1946, when the ledger sheets showed he received a salary payment of $2,250. While the record does not disclose when Norman and John received their payments, it is clear that they were treated in the ledger as parts of salaries paid these officers. For all we are informed, the proceeds from the sale of the house might have been commingled with other corporate funds and used for general corporate purposes. Where an ambiguous situation exists such as the one present in the instant case, all of the facts of record must be considered. On the one hand, there is the question of the existence of the minute entry and, on the other, there is the actual payment of salaries as shown on petitioner's ledger sheets. *148 We must not look to what was thought of in July, 1946 (even if the minute entry were written), but to what was actually done. In cases of this type, where the Commissioner has denied a deduction of payments made to officer-stockholders on the ground that such payments were dividends, a satisfactory showing by the taxpayer that such payments were compensation for personal services actually rendered and were reasonable in amount is sufficient to allow their deduction from gross income. New York Talking Machine Co., et al., 13 B.T.A. 154, 161 (1928). See also New York Theatre Program Corp., 4 B.T.A. 431 (1926). While it is true that section 115 (a) of the Internal Revenue Code provides that payments out of earnings or profits of the current year may be treated as dividends, the facts of this case do not warrant a holding that in this instance the $6,000 constituted a dividend. Under all the circumstances of this case, petitioner has sustained its burden of proof and has convinced us that the amount paid each officer as salary for 1946 was reasonable and that no part of such payment was in fact a dividend. Decision will be entered *149 under Rule 50.